In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-2606

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

SALVADOR GUADALUPE NAVARRO,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Illinois
No. 11-CR-30046 — **Michael J. Reagan**, *Chief Judge.*

ARGUED DECEMBER 8, 2014 — DECIDED OCTOBER 27, 2015

Before BAUER and HAMILTON, *Circuit Judges*, and ELLIS,
*District Judge.*[*]

ELLIS, *District Judge*. Defendant-Appellant Salvador Gua-
dalupe Navarro ("Navarro") pleaded guilty to and was con-
victed of one count of conspiracy to possess with intent to

---

[*] The Honorable Sara L. Ellis, of the United States District Court for
the Northern District of Illinois, sitting by designation.

distribute more than five kilograms of cocaine. In the plea
agreement, the government and Navarro both agreed to re-
frain from seeking a departure from the sentencing guide-
lines and to recommend a sentence within the guidelines
range as determined by the district court. At sentencing, the
district court rejected an aggravated role enhancement under
U.S.S.G. § 3B1.1 and determined that the applicable guide-
lines range was 188 to 235 months in prison. At that point,
the government argued in favor of an upward departure
from the guidelines suggested in Application Note 2 to
U.S.S.G. § 3B1.1(b) and additionally recommended an above-
guidelines sentence of 320 months. Navarro voiced no objec-
tion, however, to this breach of the plea agreement by the
government. Indeed, the district court departed upward and
imposed a sentence of 262 months. Navarro now appeals his
sentence, arguing that the government's breach of the plea
agreement constitutes plain error warranting resentencing.
We agree with Navarro and reverse and remand for resen-
tencing.

## I. BACKGROUND

On July 29, 2011, the government indicted Navarro and
22 others for their participation in a cocaine conspiracy. Na-
varro and the government entered into a written plea
agreement in which Navarro pleaded guilty to one count of
conspiracy to possess with intent to distribute more than five
kilograms of cocaine in violation of 21 U.S.C. §§ 841 and 846.
In the plea agreement, the government submitted that Na-
varro's offense level was 37 and that based on Navarro's
criminal history category of III, the resulting guidelines
range was 262 to 327 months in prison. Navarro did not con-
cur with the government's offense level calculation but

agreed that the district court would determine the offense level, the resulting guidelines range, and the applicability of any enhancements at sentencing.

Despite the dispute over Navarro's offense level, the government agreed "to recommend sentencing within the range ultimately found by the Court." Plea Agreement ¶ 3. Likewise, Navarro "agree[d] not to seek any sentence below the lowest range of the advisory sentence recommended by the guidelines after all guideline factors have been considered by the Court." *Id*. The plea agreement reiterates, in bold, **"[t]he United States and the Defendant agree not to seek a sentence outside the applicable Guideline range**." *Id.* ¶ 12.

In exchange for the government's concessions, Navarro also waived certain appellate rights. But Navarro retained the right to challenge the reasonableness of the sentence if the court imposed a sentence in excess of the applicable guidelines range.

At sentencing, the government called several witnesses to testify to Navarro's role in the conspiracy. The witnesses described Navarro loading and delivering cocaine, counting proceeds from cocaine sales, and using soap and perfumes to mask the smell of the drugs. A federal agent stated that Navarro primarily served as a drug courier, but that Navarro took on more responsibility when the leader of the conspiracy, Ivan Vazquez-Gonzalez, travelled to Mexico for an extended period of time.

Based on the witnesses' testimony, the government argued that Navarro qualified for a three-level enhancement pursuant to § 3B1.1(b) for managing or supervising other members of the conspiracy. Alternately, the government

proposed that even if the court declined to apply the
§ 3B1.1(b) enhancement, it could depart upward pursuant to
that section's application note 2. Specifically, the government
stated:

> I would also draw the Court's attention to ap-
> plication note 2 of that guideline, which says,
> . . . "An upward departure may be warranted,
> however, in the case of a defendant who did
> not organize, lead, manage, or supervise an-
> other participant, but who, nevertheless, exer-
> cised management responsibility over the
> property, assets or activities of a criminal or-
> ganization." Now there can be no doubt, based
> upon the evidence that was presented today,
> that the description applies to Mr. Navarro.

Sent. Tr. 110:5–18. While Navarro opposed the imposition of
an enhancement or an upward departure based on his role
in the offense, he did not object on the basis that the gov-
ernment breached the plea agreement by advocating for an
upward departure.

The district court determined that Navarro did not man-
age or supervise others, and thus refused to enhance Navar-
ro's offense level pursuant to § 3B1.1(b). The court found that
Navarro's adjusted offense level was 34, resulting in a guide-
lines range of 188 to 235 months in prison based on his crim-
inal history. But the court adopted the government's alterna-
tive theory, applying an upward departure pursuant to ap-
plication note 2 of § 3B1.1 based on Navarro's management
of the conspiracy's property.

After announcing these conclusions, the court allowed the government and Navarro to recommend a specific sentence. The government began by stating, "[m]y understanding of the guideline range found by the Court then is 262 to 327 months. In the plea agreement, Your Honor, the United States reserved the right to make a recommendation within that range and we're making a recommendation today of 320 months." *Id.* at 131. Navarro did not object to this recommendation as a breach of the plea agreement, and the district court did not correct the government's misapprehension of the applicable guidelines range. Navarro argued for a sentence "at the lower end of the guidelines," without specifying a particular number of months. *Id.* at 133.

The court ultimately sentenced Navarro to 262 months in prison, stating:

> In considering the specific characteristics of this offense and this wide range conspiracy, the very large quantity of drugs involved, the breadth of it, the scope of it in terms of geographics, individuals involved and the amount of drugs, this defendant's personal involvement is such that I believe this would be the sentence that I would impose in this case had I not found a three level upward departure was appropriate under comment 2, section 3B.

*Id.* at 138.

Navarro appealed his sentence, but his counsel moved to withdraw, believing that the appeal was frivolous. We denied counsel's *Anders* motion to withdraw, pointing out that Navarro had a non-frivolous argument that the government

breached its agreement and that the breach may have affected Navarro's sentence. *United States v. Navarro*, 561 F. App'x 507 (7th Cir. 2014). The parties then briefed the substance of Navarro's appeal.

## II. ANALYSIS

Navarro contends that the government breached the plea agreement in two ways: by advocating for an upward departure and by recommending a sentence above the applicable guidelines range. Navarro argues that these breaches warrant vacating his sentence and remanding the case to the district court for resentencing. We agree.

Whether a plea agreement has been breached is a question of law we review *de novo*. *United States v. Williams*, 102 F.3d 923, 927 (7th Cir. 1996). But because Navarro failed to object both when the government argued in favor of an upward departure and subsequently recommended a sentence of 320 months, we review for plain error. *United States v. Artley*, 489 F.3d 813, 824 (7th Cir. 2007). Under this standard, Navarro will prevail if he can demonstrate that: (1) there was an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected Navarro's substantial rights; and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Puckett v. United States*, 556 U.S. 129, 135, 129 S. Ct. 1423, 173 L. Ed. 2d 266 (2009); *Artley*, 489 F.3d at 824; *United States v. Salazar*, 453 F.3d 911, 913 (7th Cir. 2006).

The plea agreement contains at least two relevant provisions. In paragraph three, "[t]he Government agree[d] to recommend a sentence within the range ultimately found by the Court." Plea Agreement ¶ 3. The government explicitly

acknowledges on appeal that it breached this provision by recommending a sentence of 320 months and that the breach constitutes an error for purposes of the first prong of the plain error standard.

Additionally, in paragraph twelve, both the government and Navarro "agree[d] not to seek a sentence outside the applicable Guideline range." *Id.* ¶ 12 (emphasis omitted). The government does not respond to Navarro's argument that it also violated this provision at sentencing. We find that the government breached paragraph twelve of the plea agreement by suggesting that the court depart upward from the guidelines based on Navarro's management over the conspiracy's property. The plea agreement contemplated that the government would pursue an enhancement based on § 3B1.1(b). But the agreement barred the government from seeking an upward departure, as doing so constitutes "seek[ing] a sentence outside the applicable Guideline range." *Id.* ¶ 12; *United States v. O'Neill*, 437 F.3d 654, 662 (7th Cir. 2006) ("[A]djustments and departures are distinctly different concepts under the Guidelines. Adjustments are changes to an offense level within the Guidelines. Departures, on the other hand, are sentences imposed outside the Guidelines." (quoting *United States v. Joetzki*, 952 F.2d 1090, 1097 (9th Cir. 1991))).

The government argues that the difference between an enhancement and a departure is "very subtle," and thus, any error fails to satisfy the "clear or obvious" requirement of the plain error standard. The government notes that this subtlety was manifest by the confusion among the parties and the court during sentencing as to the applicable guidelines range. The government is not saved by the subtlety of the

distinction or confusion at Navarro's sentencing hearing. There is no "reasonable dispute" as to whether the government's advocacy for an upward departure breached the plea agreement. *Puckett*, 556 U.S. at 139; *see, e.g., Salazar*, 453 F.3d at 914 (noting that other circuits "have concluded that undercutting a sentencing recommendation may rise to the level of a breach of an agreement" (citing *United States v. Vaval*, 404 F.3d 144, 152–54 (2d Cir. 2005) (concluding that the government breached its plea agreement when it set forth an argument justifying an upward departure despite provisions prohibiting it from doing so))).

The guidelines themselves and the governing case law clearly distinguish between enhancements to the guidelines and departures from them. Specifically, § 1B1.1 of the guidelines requires sentencing courts to first determine the applicable guidelines range, and *then* consider "any other policy statements or commentary in the guidelines that might warrant consideration." U.S.S.G. § 1B1.1. The Supreme Court echoed this in *Gall*, instructing that, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 51, 128 S. Ct. 586, 169 L. Ed. 2d 445 (2007). Likewise, appellate courts must first determine whether the sentencing court committed a procedural error by improperly calculating the guidelines range, and then, only if a "district court's sentencing decision is procedurally sound," should the appellate court "consider the substantive reasonableness of the sentence imposed," including any departures from the guidelines. *Id.*

The very text of the sentencing guidelines also makes this distinction clear. The introductory commentary to Chapter 3,

Part B explains that the section pertains to enhancements to the guidelines calculation, by providing "adjustments to the offense level." U.S.S.G. ch. 3, pt. B, intro. cmt. Application note 2, in contrast, describes "upward departure[s]" for those who do not qualify for an enhancement. *Id.* § 3B1.1 cmt. n.2.

We have recognized a clear distinction between adjustments to the guidelines range and departures from them. *O'Neill*, 437 F.3d at 662. Thus, we find that the government clearly and obviously breached the plea agreement by advocating for an upward departure and by recommending a sentence above the guidelines range.

The third element of the plain error standard—where the government focuses its argument—deals with prejudice. To satisfy this prong, Navarro must demonstrate that he probably would have received a more favorable sentence if not for the government's breach. *United States v. James*, 464 F.3d 699, 709 (7th Cir. 2006); *Salazar*, 453 F.3d at 913. A "defendant whose plea agreement has been broken by the Government will not always be able to show prejudice, either because he obtained benefits contemplated by the deal anyway (*e.g.,* the sentence that the prosecutor promised to request) or because he likely would not have obtained those benefits in any event." *Puckett*, 556 U.S. at 141–42. The government contends that Navarro cannot meet this threshold primarily because the district court explicitly stated at sentencing, "I believe this would be the sentence that I would impose in this case had I not found a three level upward departure was appropriate under comment 2, section 3B." Sent. Tr. 138:9–12. The government also seeks to downplay the importance of its recommendation on the court's sentence, urging that a rec-

ommendation within the guidelines on resentencing "is extremely unlikely to result in the sentencing court imposing a different sentence." Gov't Br. at 10.

However, the Supreme Court long ago recognized the importance of the government's recommendation on the sentence imposed. *See Santobello v. New York*, 404 U.S. 257, 262, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971). In *Santobello*, the Supreme Court vacated the defendant's sentence because the prosecutor breached a promise to refrain from recommending a specific term of imprisonment. *Id*. Although defense counsel in *Santobello* immediately objected to the prosecutor's breach and thus properly preserved the issue for appeal, we find the case instructive here.

The sentencing judge in *Santobello* attempted to cure the prosecutor's breach by assuring defense counsel, "I am not at all influenced by what the District Attorney says, so that there is no need to adjourn the sentence, and there is no need to have any testimony. It doesn't make a particle of difference what the District Attorney says he will do, or what he doesn't do." *Id.* at 259. Despite this assurance, the Supreme Court reversed in "the interests of justice" and based on "appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty." *Id.* at 262.

Here, we are tasked with determining from the record before us whether Navarro probably would have received a more favorable sentence, even if only slightly more favorable, had the government complied with its obligations in the plea agreement. Unlike the unusual circumstances present in *Puckett* which led the Court to conclude that Puckett was not likely to receive the benefit contemplated in his plea agree-

ment, i.e., the district court judge made abundantly clear on the record that he had not heard of a defendant receiving a departure for acceptance of responsibility when the defendant had committed a new crime after pleading guilty but before sentencing, 556 U.S. at 132, here, the record reflects only the district court's statement that it would impose the sentence regardless of finding the three-level upward departure appropriate. Likewise, cases where we have found that the defendant failed to prove the prejudice prong are ones in which the record compellingly reflects the sentencing court was not influenced by the government's recommendation. *See United States v. Anderson*, 604 F.3d 997, 1002 (7th Cir. 2010) (district court judge consciously sentenced the defendant to the statutory maximum sentence in light of defendant's recalcitrance); *United States v. D'Iguillont*, 979 F.2d 612, 614 (7th Cir. 1992) (district court judge declined to impose upward departure advocated by the government in violation of the plea agreement and sentenced the defendant to a within-guidelines sentence). In contrast, the district court's statement here, standing alone, does not compellingly demonstrate that the government's advocacy had no influence on the ultimate sentence imposed.

Of course, requests for departures and sentencing recommendations are not binding on courts, and courts are free to impose sentences longer than those the government requests. But it appears that in this case the court was influenced by the parties' recommendations, as the sentence imposed was just above the midpoint between what the government and Navarro requested. The government's breach of the plea agreement focused the district court's attention on application note 2, with the weight of the government's recommendation behind it. This recommendation had extra

force because it included a specific number that was far
above the applicable guidelines range. As we suggested in
*United States v. Diaz-Jimenez*, 622 F.3d 692, 696 (7th Cir. 2010),
a case determining whether an objected-to breach merited
reversal of a sentence, the effects of a breach are particularly
hard to eliminate when the prosecutor demonstrates a
"strong commitment to a sentence" and does nothing to re-
tract the recommendation that breaches the plea agreement.
And while, of course, the judge would have been free on his
own to refer to application note 2, this remains an adversari-
al system in which parties and their counsel play essential
roles in framing the choices for the judge. The improper up-
per guidelines number offered by the government may well
have anchored the district judge to an inflated sentencing
range. We conclude that, had the government's initial rec-
ommendation started at a lower point, Navarro likely would
have received a lower sentence. *See United States v. Ingram*,
721 F.3d 35, 40 (2d Cir. 2013) (Calabresi, J., concurring) (dis-
cussing how "anchoring effects" influence judgments and
noting that the court "cannot be confident that judges who
begin" at a higher guidelines range "would end up reaching
the same 'appropriate' sentence they would have reached" if
they started from a lower guidelines range); *see also* Hon.
Mark W. Bennett, *Confronting Cognitive "Anchoring Effect"
and "Blind Spot" Biases in Federal Sentencing: A Modest Solution
for Reforming a Fundamental Flaw*, 104 J. Crim. L. & Criminol-
ogy 489, 492 (2014) (discussing the "potential robust and
powerful anchoring effect" of the sentencing guidelines and
"the effect of the 'bias blind spot' in determining just sen-
tences"); Amos Tversky & Daniel Kahneman, *Judgment Un-
der Uncertainty: Heuristics and Biases*, 185 Science 1124, 1124

(1974) (classic theoretical work on how framing and expectations influence judgment).

The government could have avoided a breach by seeking an enhancement pursuant to § 3B1.1(b), and stopping there once the court determined that the enhancement did not apply. Then, the government could have recommended a maximum sentence of 235 months in prison, the high end of the applicable sentencing guidelines range. Had the government done so, the district court would have received recommendations of 188 and 235 months. We conclude that if the district court were faced with these recommendations, it is likely that Navarro would have received a more lenient sentence than 262 months in prison.

After finding that the first three elements of the plain error standard are met, we have "the *discretion* to remedy the error." *Puckett*, 556 U.S. at 135. The Supreme Court cautions that we should exercise that discretion "only if the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* (alteration in original) (citation omitted) (internal quotation marks omitted). Here, the government's breach, even if inadvertent, seriously undermines the fairness and integrity of Navarro's sentence.

In addition to the waivers of rights inherent in all guilty pleas, Navarro waived his right to seek a downward departure at sentencing. Navarro's counsel followed through on this promise, requesting a sentence "at the lower end of the guidelines." Sent. Tr. 133. In exchange for his plea, Navarro received a two-level reduction in his guidelines range for acceptance of responsibility, as well as the government's promises to refrain from seeking an upward departure and to recommend a sentence within the guidelines range. We have

previously recognized the importance of such promises in enticing a defendant to plead guilty. *Diaz-Jimenez*, 622 F.3d at 694 ("The government's recommendation for lenity is an important part of the consideration for a defendant's entering a plea of guilty[.]").

But the government failed to honor its promises when it advocated for an upward departure and then recommended a sentence more than seven years longer than the high end of the guidelines range. "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello*, 404 U.S. at 262. We find that reversal is appropriate because the government's breach seriously undermined the fairness and integrity of Navarro's sentence. On resentencing, the government is required to strictly abide by the terms of the plea agreement.

## III. CONCLUSION

For the foregoing reasons, we REVERSE the judgment of the district court and remand for resentencing.[1]

---

[1] Where the government has breached a plea agreement based on its sentencing recommendation, our usual course is to remand for resentencing before a different judge. *See Diaz-Jimenez*, 622 F.3d at 694 ("[A] minimum remedy [for breach of a plea agreement] is specific performance and resentencing by a different judge."). However, Navarro requests that the case be remanded back to Chief Judge Reagan given his familiarity with the conspiracy. Because Navarro does not oppose resentencing by the same judge, and in fact specifically requests it, we will abide by that request.