In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-1545

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ROBERT D. TAYLOR,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Indiana, New Albany Division.
No. 4:15-cr-00029-TWP-VTW-1 — **Tanya Walton Pratt**, *Judge.*

ARGUED SEPTEMBER 28, 2018 — DECIDED DECEMBER 3, 2018

Before RIPPLE, SYKES, and SCUDDER, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Robert Taylor pleaded guilty to one
count of possession of child pornography, in violation of 18
U.S.C. § 2252(a)(4)(B). His plea agreement contemplated an
offense level of 31, which reflected a two-level reduction be-
cause Mr. Taylor had not sought to distribute child pornogra-
phy. When the probation officer prepared the presentence re-
port, she concluded that this two-level reduction was not
available under the Guidelines. At the sentencing hearing, the

parties stated that they had no objection to the presentence report; the district court then accepted the probation officer's offense level calculation of 33 and sentenced Mr. Taylor to 135 months' imprisonment, the low end of the guidelines range for a level 33 offense.

Mr. Taylor now contends that the Government was bound to advocate for a sentence within the lower range contemplated by the plea agreement. He submits that the Government's advocacy for a within-Guidelines sentence based on the corrected calculation constitutes a breach of the plea agreement. He also contends that two enhancements contained within the plea agreement are erroneous. He asks that we remand the case for resentencing without the application of the enhancements and permit him the option to withdraw from the plea in its entirety.

We affirm. Under the plea agreement, the Government was bound to advocate for a within-Guidelines sentence; it fulfilled that obligation. The agreement has not been breached. Further, Mr. Taylor's stipulations in the agreement waived his right to appeal the enhancements he now challenges. Even were we to disregard that waiver, we would conclude that the district court was on solid ground in imposing sentence.

# I

## A.

In early 2015, investigators seized a web server hosting "Website A," a website whose primary purpose was to advertise and distribute child pornography. The site, which had nearly 215,000 members, could not be accessed through ordinary internet searches; instead, a user had to have received

the URL directly from another user. Users also were required to take numerous affirmative steps to gain access, including downloading specific software. Once accessed, the site itself provided additional advice regarding strategies to facilitate anonymous communication over the internet.

During the period in which the seized server hosted Website A, investigators monitored its content and user communications. During that monitoring, a user with the handle "stepdad69" logged in. That user had logged in to Website A for some eighty hours in the preceding months and had accessed a large number of posts containing images and videos of child pornography.

The Government traced the particular IP address through which "stepdad69" had accessed the website on particular dates to an Airbnb. Further investigation revealed that, during the period that "stepdad69" used that IP address, Mr. Taylor had rented the Airbnb. Investigators thereafter identified Mr. Taylor's residence in Bedford, Indiana. They then obtained and executed a search warrant for his home, which he shared with his wife and their children. Officers located a laptop; Mr. Taylor identified himself as its sole user.

Investigators also seized and searched Mr. Taylor's smart phone. His phone contained several files relevant to the present appeal. One video file showed an adult male entering the room where one of Mr. Taylor's stepchildren, a girl then aged fourteen, appears to be sleeping. The video zooms in on the feet of the girl and then moves up her body. As the video progresses, her shirt is raised, exposing her stomach. Two additional image files show the same child lying asleep on a bed. Those images, taken from above, depict an adult male penis

touching the underside of her foot.[1] At the conclusion of the investigation, law enforcement determined that Mr. Taylor's media—including his computer and his phone—contained more than 15,000 images and more than 2,000 videos of child pornography.

**B.**

Mr. Taylor was charged with one count of possession of child pornography on a device containing more than 100 images, in violation of 18 U.S.C. § 2252(a)(4)(B). He then entered into a detailed plea agreement with the Government. The agreement contained stipulations regarding the facts as well as the applicability of a number of guideline provisions for calculation of the appropriate sentence.

The parties agreed that the base offense level under U.S.S.G. § 2G2.2(a)(l) was 18. The parties subtracted a total of five levels because there was no evidence of intent to distribute (2 levels, § 2G2.2(b)(1)) and for acceptance of responsibility (3 levels, § 3El.l(b)). They added eighteen levels: because the material involved prepubescent minors (2 levels, § 2G2.2(b)(2)); because the material involved sadistic or masochistic conduct (4 levels, § 2G2.2(b)(4)); because the defendant engaged in a pattern of activity involving sexual abuse of a minor (5 levels, § 2G2.2(b)(5)); because the material involved the use of a computer (2 levels, § 2G2.2(b)(6)); and because there were more than 600 images (5 levels, § 2G2.2(b)(7)(D)).

---

[1] At oral argument, Mr. Taylor's attorney conceded that the genitalia captured in the photograph was Mr. Taylor's. He contested whether his penis *touched* the child's foot, or was merely near it, but the factual basis for his plea agreement unambiguously states that it is a touching. R.40 at 11.

Accordingly, the parties' agreement calculated the total offense level as 31.

The agreement acknowledged that the stipulations "are binding on the parties but are only a recommendation to the Court and that the Court will determine the advisory sentencing guidelines applicable in this case."[2] It reiterated that "the final determination concerning the applicable advisory guideline calculation, criminal history category, and advisory sentencing guideline range will be made by the Court."[3] Within this context, the agreement recognized that "[t]he Government has agreed to recommend a sentence within the advisory guideline range as determined by the Court."[4]

The Probation Office prepared a presentence investigation report. Although it accepted most of the parties' guidelines calculations, it disagreed with the stipulation that Mr. Taylor was entitled to a two-level reduction because he did not intend to distribute pornographic material.[5] The matter was

---

[2] *Id.* at 12.

[3] *Id.* at 3.

[4] *Id.* at 4.

[5] Mr. Taylor does not challenge the conclusion of the Probation Office on this reduction. Mr. Taylor was sentenced under U.S.S.G. § 2G2.2. That guideline has two possible base offense levels: 18, under subsection (a)(1), which applies to certain enumerated offenses; and 22, under subsection (a)(2), which applies to all other offenses related to trafficking in child pornography. Defendants who are sentenced to the higher base offense level applicable under subsection (a)(2) are eligible for a two-level reduction where there is no intent to distribute the material. *See* U.S.S.G. § 2G2.2(b)(1). Mr. Taylor was convicted of one of the enumerated offenses, and his base offense level was therefore calculated under (a)(1) to be 18. Accordingly, the reduction under § 2G2.2(b)(2) was not available.

discussed at sentencing, and counsel did not object to the changed calculation. Indeed, counsel for Mr. Taylor stated, "I have discussed that with Mr. Taylor and he understands why it is a 33. However, we will present evidence to the Court requesting a sentence within the range of a 31."[6] The district court also repeated the language in the plea agreement that the Government had agreed to recommend a sentence within the guidelines range "as determined by the Court," and Mr. Taylor stated that he understood.[7]

The district court accepted the PSR's calculation, and the parties' apparent agreement with it. It determined that the resulting guidelines range was 135–168 months' imprisonment. In arriving at the appropriate sentence, the court specifically noted that Mr. Taylor had experienced significant tragedy and trauma: as a toddler, Mr. Taylor had witnessed his own mother's murder by a former boyfriend; he had suffered physical abuse by his father; and he was the victim of sexual abuse by his father's girlfriend when he was eight years old. The court imposed a sentence of 135 months, at the low end of the applicable range.

Mr. Taylor's attorney did not take an appeal within the applicable timeline. Mr. Taylor filed a motion to vacate, claiming ineffective assistance for failure to take the appeal. He also challenged the enhancement for engaging in a pattern of activity involving sexual abuse of a minor. The district court denied the motion in all respects and reentered judgment to restart the appeal deadline. Mr. Taylor now appeals.

---

[6] R.57 at 28.

[7] *Id.* at 16.

## II

## DISCUSSION

Mr. Taylor makes several arguments challenging his sentence. First, he contends that the plea agreement bound the Government to advocate for a sentence within the guidelines range contemplated by the plea agreement, regardless of whether the district court accepted its calculations. The Government's ultimate advocacy for a sentence within the higher range calculated by the Probation Office and the district court, he contends, constitutes a breach of the plea agreement. Mr. Taylor also maintains that two specific enhancements included in the plea agreement and accepted by the district court, for engaging in a pattern of activity involving sexual abuse of a minor and for use of a computer, should not apply. We will examine each of these contentions.

### A.

Mr. Taylor submits that the plea agreement bound the Government to advocate for a sentence within the range that *would* have applied had the district court agreed with the parties' stipulations regarding the applicable guideline provisions and concluded that the total offense level was 31. He relies on the provision of the agreement stating that the stipulations relating to guideline provisions "are binding on the parties."[8] Arguing in support of the district court's decision, the Government points to two different statements in the plea agreement. Specifically, the Government notes that it "agreed to recommend a sentence within the advisory guideline range *as determined by the Court*" and that both parties to the

---

[8] R.40 at 12.

agreement acknowledged that the court was not bound by their stipulations as to the guidelines calculation.[9]

Whether a party has breached a plea agreement is a question of law that we review de novo. *United States v. Navarro*, 817 F.3d 494, 499 (7th Cir. 2016). Because Mr. Taylor failed to object at sentencing, however, our review is for plain error. *Puckett v. United States*, 556 U.S. 129, 135–36 (2009) (holding that plain error review under Federal Rule of Criminal Procedure 52(b) applies to forfeited claims by a defendant that the Government breached a plea agreement). Under that standard, a defendant must demonstrate "an error or defect," that is "clear or obvious," and that "affected the [defendant's] substantial rights." *Id.* at 135. "[I]f the above three prongs are satisfied, the court of appeals has the discretion to remedy the error—discretion which ought to be exercised only if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (emphasis removed) (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)).

Mr. Taylor contends that *Navarro* requires reversal. In *Navarro*, as in the present case, the plea agreement contained a promise by the Government to recommend a sentence within the range as calculated by the district court. At Navarro's sentencing, the Government misstated the range that the court had calculated and, accordingly, argued for a sentence in excess of the proper calculated range. In addition, although the

---

[9] *Id.* at 4 (emphasis added). Mr. Taylor does not argue that the United States breached the agreement by agreeing with the Probation Office that the agreement miscalculated the offense level; he contends only that regardless of the final calculation of offense level by the district court, the Government was obligated to advocate for a sentence in the range of the calculations within the agreement.

agreement contemplated that the Government would seek to apply an *enhancement* for the defendant's management of the assets of the conspiracy, it explicitly forbade the Government from arguing for an upward *departure* on any basis. At sentencing, however, the Government argued for the contemplated enhancement, but noted that if the court chose not to apply it, the court could impose an upward departure based on the same asset management.

We concluded that the Government breached the agreement both by arguing (albeit mistakenly) for a sentence outside the range *as calculated by the court* and by arguing for a departure for asset management. *Id.* at 499. The first conclusion emanated from the plain language of the agreement and the clear requirement that the Government advocate for a within-Guidelines sentence. The second conclusion, based on the distinction between enhancements and departures, turned on the Government's explicit agreement *not* to argue for a departure. *Id.* at 499–501.

Neither of the errors made by the Government in *Navarro* is present here. Pointedly, unlike the Government's mistaken statement of the range in *Navarro*, Mr. Taylor concedes that the Government in the present case argued for a sentence within the range that the district court calculated, fulfilling its *explicit* obligation to do so under the agreement. Furthermore, Mr. Taylor repeatedly assented, at various times during the sentencing, to the court's authority to determine the guidelines range and to the Government's agreement to a within-Guidelines sentence.

The gravamen of Mr. Taylor's argument on appeal is that the provision in the agreement that it was "binding on the

parties"[10] was a fallacy. He characterizes the agreement as binding only him, while freeing the Government to advocate for a sentence in excess of the parties' agreement. To reach his conclusion, however, Mr. Taylor conflates distinct parts of the parties' agreement. First, the parties agreed to the applicability of certain guideline provisions, including both the base offense level guideline and various enhancements.[11] The Government was not free to advocate in favor of a greater base offense level or the application of additional enhancements; in turn, Mr. Taylor was not free to argue for a lesser base offense level or that any of the stipulated enhancements should not be included. In addition to the promises made with respect to the *calculation*, the agreement also contained explicit language about the ultimate sentence: after the court calculated the range that it would apply, the Government had to argue for a sentence within the guidelines range chosen by the court. Mr. Taylor, however, was free to argue for *any* sentence, including one *below* the range chosen by the court.[12]

---

[10] *Id.* at 12.

[11] The enhancements increase the offense levels in the guidelines calculation.

[12] R.40 at 4–5. By a parity of reasoning, had the court determined that one or more enhancements stipulated in the plea did not apply, and arrived at a lower range, the Government would have been bound to argue for a sentence within that lower calculated range. It would be a clear breach of the agreement, under those circumstances, for the Government to advocate for a sentence within the higher range contemplated by the agreement but not accepted by the court. The problem for Mr. Taylor is that the court determined the opposite, and the range went up.

Because the Government did not breach the plea agreement, Mr. Taylor has failed to meet the first prong of the plain error standard, i.e., a defect in his sentencing.

**B.**

Mr. Taylor next submits that the district court erred in applying two specific enhancements to his base offense level for engaging in a pattern of activity involving sexual abuse of a minor, U.S.S.G. § 2G2.2(b)(5), and for use of a computer, *id.* § 2G2.2(b)(6).

Mr. Taylor explicitly stipulated to the application of both enhancements in the plea agreement.[13] He concedes as much and notes that he was prohibited from objecting to these enhancements because of the plea. His reply brief suggests that his attorney had attempted to negotiate the omission of these enhancements but that the Government had strong-armed him into submission; he does not, however, argue that his plea was not knowing or voluntary as a legal matter.

Mr. Taylor's assent to the plea agreement containing stipulations on the enhancements is dispositive. Plea agreements are contracts, *United States v. Pappas*, 409 F.3d 828, 830 (7th Cir. 2005), and the inclusion of specific terms demonstrates the result of negotiations, *see United States v. Cook*, 406 F.3d 485, 487 (7th Cir. 2005). Accordingly, "[i]f a defendant knowingly agreed to relinquish a specific right in exchange for concessions from the government, then that right has been intentionally abandoned and thus waived." *Pappas*, 409 F.3d at 830. Mr. Taylor contends, in essence, that his hand was forced and that he never truly agreed with the enhancements, but his

---

[13] *See* R.40 at 13.

narrative demonstrates just the opposite: That he signed the agreement despite the Government's insistence on these enhancements establishes that he concluded that the benefit of the Government's plea offer, even including those provisions, was worth more to him than the risks of trial. That deliberate decision amounts to a waiver.[14]

## Conclusion

For the reasons set forth above, we affirm Mr. Taylor's sentence.

AFFIRMED

---

[14] The same contract principles that establish that Mr. Taylor waived the right to contest the enhancement also demand that, even without waiver, Mr. Taylor cannot now be released solely from the provisions of his plea regarding these enhancements. Although he also requests, in the alternative, that he be permitted to withdraw from the agreement in its entirety at his election, his primary request to be resentenced enforcing the plea *without* these enhancements is an approach that we do not permit. *See, e.g., United States v. Fiore*, 178 F.3d 917, 925 (7th Cir. 1999) ("A defendant may not withdraw from portions of a plea agreement; he may sometimes withdraw from the plea agreement in its entirety and go to trial or he must abide by the plea agreement in its entirety. It is inappropriate to take a blue pencil to the agreement, removing the provisions that in retrospect the defendant wishes were not there." (internal quotation marks omitted) (citation omitted)).