FILED
United States Court of Appeals
Tenth Circuit

July 27, 2022

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ISMAEL J. LOPEZ,

Defendant - Appellant.

No. 21-3132
(D.C. No. 6:20-CR-10036-EFM-1)
(D. Kan.)

_____

**ORDER AND JUDGMENT[*]**

_____

Before **TYMKOVICH**, Chief Judge, **BRISCOE**, and **MATHESON**, Circuit Judges.

_____

Ismael Lopez pled guilty to one count of being a felon in possession of a firearm. Under the plea agreement, the parties agreed to request a prison sentence between 96 and 108 months. The district court determined the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") advisory sentence was 120 months. At the sentencing hearing, the prosecution told the court that it was not "asking for a sentence of anything other than 108 months," ROA, Vol. 3 at 122, but then argued that the criminal history score in the Presentence Investigation Report ("PSIR") underrepresented Mr. Lopez's

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

criminal history. Mr. Lopez's attorney requested a 96-month sentence. The court sentenced Mr. Lopez to 120 months.

For the first time on appeal, Mr. Lopez argues the Government breached the plea agreement when the prosecutor stated at the sentencing hearing that the criminal history score in the PSIR unrepresented his criminal history. Reviewing for plain error, we conclude that even if the Government breached the plea agreement, Mr. Lopez has not shown the breach affected his substantial rights—that he would have received a different sentence absent the breach. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm.

## I. BACKGROUND

### A. *Factual History*

Five times between December 2019 and June 2020, law enforcement found guns and/or drugs in vehicles or apartments linked to Mr. Lopez:

- **December 2019**—Police officers responded to reports of a shooting at an apartment complex. A man later identified as Mr. Lopez emerged from one of the apartments covered in blood. The police obtained a warrant to search the apartment from which Mr. Lopez emerged and found three guns.[1]

- **January 2020**—The police stopped a truck with Mr. Lopez in the passenger seat, searched the vehicle, found and seized drugs and five guns, and arrested Mr. Lopez.

- **April 9, 2020**—The police found a gun in a car with Mr. Lopez again in the passenger seat.

---

[1] One of the guns was rusted and in "very poor condition," and its serial number was indecipherable. ROA, Vol. 2 at 18; ROA, Vol. 3 at 90, 93-95.

- **April 14, 2020**—The police executed a search warrant for Mr. Lopez's apartment and found a gun and drugs.

- **June 2020**—While executing an arrest warrant for Mr. Lopez, the police found a gun in a car that he was driving.

### B. *Procedural History*

1. **Indictment**

A grand jury in the District of Kansas charged Mr. Lopez with nine counts—five counts of being a felon in possession of a firearm, three counts related to drug trafficking and distribution, and one count of possessing a firearm in furtherance of a drug trafficking crime.

2. **Plea Agreement**

Mr. Lopez pled guilty to one count of being a felon in possession of a firearm. Under the plea agreement, the Government agreed (1) not to file additional charges based on the five incidents described above, (2) to dismiss the other eight counts, and (3) to recommend that Mr. Lopez receive a Guidelines offense level reduction for acceptance of responsibility. The parties also agreed to request a sentence between 96 and 108 months, understanding that this agreement was not binding on the court. ROA, Vol. 1 at 43.

3. **PSIR**

The PSIR determined that under U.S.S.G. § 2K2.1(a)(5), his base offense level was 18 because his crime involved a type of firearm described in 26 U.S.C. § 5845(a). The PSIR also applied the following enhancements and reduction:

- A four-level enhancement under U.S.S.G. § 2K2.1(b)(1) because his felon-in-possession offense involved eleven guns;[2]

- A four-level enhancement under U.S.S.G. § 2K2.1(b)(4)(B) because one of the guns had an obliterated serial number;

- A four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) because he possessed a firearm in connection with drug trafficking; and

- A three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a)-(b).

His adjusted total offense level was 27.

The PSIR also calculated Mr. Lopez's criminal history score as 11, resulting in a criminal history category of V. The PSIR said Mr. Lopez did not receive criminal history points for several previous convictions because they did not count under U.S.S.G. § 4A1.2(c)(1)-(2), (e)(3). The unscored offenses included battery and domestic battery.[3]

Mr. Lopez's adjusted offense level and criminal history category yielded a 120-to-150-month Guidelines range. The statutory maximum for his offense was 120 months, so 120 months became his advisory Guidelines sentence.

## 4. Sentencing Hearing

At the sentencing hearing, the district court accepted the PSIR's Guidelines calculations and then heard the parties' sentencing recommendations. The prosecutor and the court had the following exchange:

---

[2] The total number of guns included the five connected with the January 2020 traffic stop and six other guns that "were located, as relevant conduct, in other counts charged against the defendant." ROA, Vol. 2 at 20.

[3] The PSIR did not discuss the underlying facts of those offenses.

**COURT:**  Let me hear recommendations from the parties as to sentencing.

**PROSECUTOR:**  Thank you, Your Honor.  Before I get into my comments, I want to make one thing very clear.  In these kind of cases, I always want to be certain that the Court understands I'm not asking for any sentence other than 108 months.  The plea agreement in this case called for the Government cannot request a sentence in excess of 108 months—

**COURT:**  Right.

**PROSECUTOR:**  —or the defense cannot ask for a sentence of less than 96 months, so nothing I'm about to say is—what I want to do is not indicate to the court that I'm asking for a sentence of anything other than 108 months, but that is the sentence we believe is appropriate in this case, Judge.

The defendant, the deal we made—under the deal we made, the defendant was able to avoid additional time that he could have been facing if he'd gone to trial and been convicted of everything.  But the totality of the criminal conduct in this case, all five incidents, where the defendant is in possession of or near multiple firearms, is consistent with the defendant's criminal history.  And I would argue, Judge, the defendant was at criminal history V, but I think you can make an argument, which I'm going to do, that that underrepresents his criminal history because—

**COURT:**  In fact, I have a note to that regard.  There's lots of very violent and unscored criminal history in his PSIR, unscored so he only has 11 points, but I do think that underrepresents his criminal history.

**PROSECUTOR:**  Okay.  And by my count, Judge, just going from his adult convictions, there's ten previous convictions, some of which are traffic-related, admittedly, but there's ten that are not scored.  And that's why I believe that a criminal history category of IV—V, excuse me, does underrepresent his true criminal history.  And as we've already discussed, some of that criminal history is for violent crimes, battery, domestic battery, [aggravated] assault.  We

5

believe, Your Honor, that the defendant has earned a sentence of 108 months, so we'd ask the Court not to consider anything less than that sentence, Judge.  Thank you.

ROA, Vol. 3 at 122-23 (spacing and formatting altered).

Mr. Lopez requested a 96-month sentence.  He argued that a downward variance from 120 months was warranted given that the court had applied a four-level enhancement for a gun with an obliterated serial number despite that the gun did not work.

After hearing the parties' recommendations, the court rejected the plea agreement's 96-to-108-month range.  It reiterated that it "had made a note that [it] thought [Mr. Lopez's] criminal history category V pretty seriously understated the severity of his criminal background." *Id.* at 125-26.  The court continued:  "There are, by my count, 43 paragraphs—again some of those are traffic offenses—of his criminal history, lots of violent unscored offenses.  I think his criminal history category V seriously understates his criminal history category. . . .  [T]here's lots of violent offenses.  Mr. Lopez is a violent man.  I think [the prosecutor] argued that in one of his arguments.  He says he beats people up, I think is what he said." *Id.* at 126.  And the court expressed "concern[] about the level of violent conduct that Mr. Lopez, a relatively young man, 32 years old, has engaged in." *Id.* at 128.

The court sentenced Mr. Lopez to the Guidelines sentence of 120 months, to be followed by three years of supervised release.  Neither party objected to the sentence.  Mr. Lopez timely appealed.

6

## II. **DISCUSSION**

Mr. Lopez argues for the first time on appeal that the Government breached the plea agreement by arguing for a sentence above the agreed-upon 96-to-108-month range and that he is therefore is entitled to relief under our plain error standard. We disagree and affirm.[4]

### A. *Plain Error*

Mr. Lopez failed to object in district court to the Government's purported breach of the plea agreement. We therefore review for plain error. *See Puckett v. United States*, 556 U.S. 129, 133-35 (2009); *United States v. Mendoza*, 698 F.3d 1303, 1309 (10th Cir. 2012). Under that standard, Mr. Lopez bears the burden of establishing "(1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the

---

[4] The plea agreement prohibited Mr. Lopez from "appeal[ing] or collaterally attack[ing] any matter in connection with th[e] prosecution, his conviction, or the components of the sentence to be imposed herein." ROA, Vol. 1 at 45. The Government invokes this appeal waiver for the first time in its brief. Aplee. Br. at 13.

"[A]n appellate waiver is not enforceable if the Government breaches its obligations under the plea agreement." *United States v. Rodriguez-Rivera*, 518 F.3d 1208, 1212 (10th Cir. 2008). But an appeal waiver applies if the government has not breached the agreement. *See id.* at 1217.

Because, for purposes of plain error review, we assume rather than decide that the government breached the plea agreement, it appears the appeal waiver here would not apply under *Rodriguez-Rivera*. But we need not resolve that question because we exercise our discretion to reach the merits. *See United States v. Garcia-Ramirez*, 778 F.3d 856, 857 (10th Cir. 2015) (per curiam); *United States v. Black*, 773 F.3d 1113, 1115 n.2 (10th Cir. 2014).

fairness, integrity, or public reputation of judicial proceedings." *United States v. Wright*, 848 F.3d 1274, 1278 (10th Cir. 2017) (quotations omitted).[5]

At the third step of plain error, "the defendant ordinarily must show a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Rosales-Mireles v. United States*, 138 S. Ct 1897, 1904-05 (2018) (quotations omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Wright*, 848 F.3d at 1278 (quotations omitted).

B. *Analysis*

1. **Failure to Show Reasonable Probability of Prejudice**

Mr. Lopez has not met his burden under the "rigorous" and "demanding" plain error standard. *United States v. Rosales-Miranda*, 755 F.3d 1253, 1258 (10th Cir. 2014) (quotations omitted). Even assuming the Government plainly breached the plea agreement by arguing that the PSIR underrepresented Mr. Lopez's criminal history,[6]

---

[5] As applied to a plea agreement breach appeal, Mr. Lopez must show "(1) the government breached the plea agreement, (2) the breach was plain, (3) the breach affected the defendant's sentence (i.e. absent the breach, the defendant likely would have received the sentence the prosecutor had promised to recommend), and (4) the breach affected the fairness and integrity of judicial proceedings as a whole." *United States v. Rodriguez-Barbosa*, 762 F. App'x 538, 541 (10th Cir. 2019) (unpublished) (citing *Puckett*, 556 U.S. at 139-43, 142 n.4) (cited for persuasive value under Fed. R. App. P. 32.1; 10th Cir. R. 32.1(A)).

[6] We doubt the prosecutor's discussion of Mr. Lopez's criminal history, if limited to supporting the Government's request for a 108-month sentence and to countering Mr. Lopez's request for 96 months, would have caused error, especially when the prosecutor said three times he was asking for 108 months. *See* ROA, Vol. 3 at 122-23. But the prosecutor's argument that the PSIR's criminal history category underrepresented

Mr. Lopez fails on step three of plain error review because he has not demonstrated a reasonable probability that he would have received a different sentence without the Government's criminal history argument.

At the sentencing hearing, the district judge expressed concern about Mr. Lopez's criminal history before the Government raised the issue. When the Government began to argue that the PSIR underrepresented Mr. Lopez's criminal history, the court interrupted, stating, "In fact, I have a note to that regard. There's lots of very violent and unscored criminal history in his PSIR, unscored so he only has 11 points, but I do think that underrepresents his criminal history." ROA, Vol. 3 at 123. Moments later, the court again stated it "had made a note that [it] thought [Mr. Lopez's] criminal history category V pretty seriously understated the severity of [his] criminal background." *Id.* at 125-26.

The court's independent concern about Mr. Lopez's criminal history, expressed before the Government raised the issue, shows the Government's criminal history argument had little if any impact on the sentence.

2. **Mr. Lopez's Arguments**

Mr. Lopez acknowledges that "the court had some concerns about [his] criminal history on its own," but argues that he has established prejudice for two reasons. Aplt. Reply Br. at 21; *see* Aplt. Br. at 28-34. We disagree.

---

Mr. Lopez's criminal history raises sufficient concern about compliance with the plea agreement that we resolve this appeal at step three of plain error review.

First, he contends that the Government's criminal history argument influenced the court to impose the 120-month sentence. *See* Aplt. Br. at 31-33; Aplt. Reply Br. at 21-23. In support, he notes that "[t]he district court did not mention [his] criminal history as an aggravating factor until after the prosecutor did so himself." Aplt. Reply Br. at 21. And he argues "[t]he court repeated the prosecutor's arguments regarding the number of unscored offenses and the alleged violence of Mr. Lopez's history." Aplt. Br. at 32. But the sentencing hearing transcript shows the opposite. As the Government began addressing Mr. Lopez's criminal history, the district court interrupted and said it had already noted that "there's lots of very violent and unscored criminal history in [Mr. Lopez's] PSIR." ROA, Vol. 3 at 122-23. Thus, we disagree with Mr. Lopez's contention that "[t]he prosecutor's argument 'focused the district court's attention' on the criminal-history underrepresentation, 'with the weight of the government's recommendation behind it.'" Aplt. Br. at 31 (quoting *United States v. Navarro*, 817 F.3d 494, 501 (7th Cir. 2015)).[7]

---

[7] Earlier in the hearing, the prosecutor, arguing in favor of a four-level enhancement under § 2K2.1(b)(1), said Mr. Lopez "beats people." ROA, Vol. 3 at 112; *see id.* at 110-12. This statement was not part of his later argument, the one Mr. Lopez challenges on appeal, that Mr. Lopez's criminal history category underrepresented his criminal history. *See id.* at 122-23. At the end of the hearing, when the district court imposed the sentence, it referred to the prosecutor's statements about the enhancement. Mr. Lopez acknowledges that the court was "[r]eferencing an argument the prosecutor had made in support of one of the guidelines enhancement[s]," Aplt. Br. at 11, not the prosecutor's criminal history argument.

Second, Mr. Lopez relies on three cases, but they do not help him.  In each case, the prosecution recommended a sentence contrary to the plea agreement.  That did not happen here.

In *Santobello v. New York*, 404 U.S. 257 (1971), the government recommended a one-year sentence, breaching its promise to make no sentencing recommendations.  *Id.* at 258-59.  Defense counsel immediately objected.  *Id.* at 259.  The judge sentenced the defendant to one year in prison, stating his sentencing decision was "not at all influenced by" the prosecutor's recommendation.  *Id.* at 259-60.  The Supreme Court, reviewing for harmless error,[8] said that it had "no reason to doubt" that "the prosecutor's recommendation did not influence [the judge]."  *Id.* at 262.[9]  *Santobello* is inapposite.  "Whether an error can be found harmless is simply a different question from whether it can be subjected to plain-error review.  *Santobello* (given that the error in that case *was* preserved) necessarily addressed only the former."  *Puckett*, 556 U.S. at 139.  The prosecution must show harmless error.  *United States v. Summers*, 414 F.3d 1287, 1303 (10th Cir. 2005).  In this case, Mr. Lopez must show a reasonable probability that he would have received a different sentence absent the Government's breach.  *See United*

---

[8] In *Puckett*, the Court said that *Santobello* applied harmless error review.  *See Puckett*, 556 U.S. at 139.

[9] The Court vacated the sentence "in "the interests of justice" and based on "appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty."  *Santobello*, 404 U.S. at 262-63.

11

*States v. Gonzalez-Huerta*, 403 F.3d 727, 733 (10th Cir. 2005). He has not met that burden.

Mr. Lopez's reliance on *United States v. Kirkland*, 851 F.3d 499 (5th Cir. 2017) and *United States v. Navarro*, 817 F.3d 494 (7th Cir. 2015), also is misplaced. In both, the government explicitly recommended sentences above the range the parties agreed to in plea agreements. *See Kirkland*, 851 F.3d at 501, 504 (explaining that the government "aggressively" argued for a high-end sentence despite agreeing to recommend a sentence at the low end of the Guidelines range); *Navarro*, 817 F.3d at 497 (government asked for a 320-month sentence despite agreeing not to request a sentence outside the Guidelines range, which the district court calculated as 188 to 235 months). Here, the Government asked for 108 months and never recommended a specific sentence for Mr. Lopez outside of the parties' agreed-upon range.

\* \* \* \*

The district court concluded the PSIR underrepresented Mr. Lopez's criminal history before the Government raised the issue. Mr. Lopez's counter-arguments are unconvincing. He has not shown a reasonable probability that he would have received a different sentence had the Government not presented its criminal history argument. He has thus not satisfied step three of plain error review.

## III.  **CONCLUSION**

We affirm Mr. Lopez's sentence.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge