In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-1215

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

FERNANDO GODINEZ,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:16-cr-00554-2 — **Jorge L. Alonso**, *Judge.*

ARGUED DECEMBER 4, 2019 — DECIDED APRIL 9, 2020

Before FLAUM, RIPPLE, and HAMILTON, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Fernando Godinez pleaded guilty to
conspiracy to distribute cocaine, in violation of 21 U.S.C.
§§ 841(a)(1) and 846, and to possession of a firearm in fur-
therance of a drug trafficking crime, in violation of 18 U.S.C.
§ 924(c)(1)(A)(i). The Government filed an information under
21 U.S.C. § 851, advising the district court that Mr. Godinez
had a prior Ohio conviction for possession of cocaine. The
district court determined that this prior state conviction

made Mr. Godinez eligible for a mandatory minimum sentence of ten years' imprisonment rather than the otherwise applicable five-year mandatory minimum. *See* 21 U.S.C. § 841(b)(1)(B) (2010).

Mr. Godinez now submits that, at the time of sentencing, the district court—and both parties—misapprehended the legal consequences of the Government's filing the § 851 information. Specifically, he submits that the First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194 (the "First Step Act"), enacted after the signing of Mr. Godinez's plea agreement but before his sentencing, rendered invalid both the information and the increased penalties it carried. In his view, the district court should not have characterized his previous Ohio conviction as a conviction for "possession with intent to distribute" cocaine, the qualifying requirement for the ten-year mandatory minimum. Therefore, Mr. Godinez submits, he is not subject to the higher mandatory minimum.

Mr. Godinez is correct. By failing to recognize the changes implemented by the First Step Act, the district court premised its sentencing calculations on a mandatory minimum that was twice what it should have been. This oversight constitutes plain error and requires that Mr. Godinez be resentenced. Accordingly, we vacate the judgment of the district court and remand the case to the district court for sentencing.

## I.

## BACKGROUND

In 2016, federal agents arrested Mr. Godinez and his brother Adan Godinez ("Adan") during a controlled drug

purchase. The brothers previously had arranged to sell approximately two kilograms of cocaine to an undercover officer in a mall parking lot. At the scene, both brothers were armed; Mr. Godinez also came prepared with extra ammunition. When law enforcement officers surrounded Mr. Godinez, he surrendered without resistance. Adan, who was in a separate car, did not. He exchanged fire with the officers and was wounded before his apprehension.

Mr. Godinez pleaded guilty to one count of conspiracy to distribute cocaine, a violation of 21 U.S.C. §§ 841(a)(1) and 846 ("Count One"), and one count of possession of a firearm in furtherance of a drug trafficking crime, a violation of 18 U.S.C. § 924(c)(1)(A)(i).[1] Under Count One, he faced a mandatory minimum of five years' imprisonment and a maximum of forty years' imprisonment.[2] At the time of the plea agreement, a prior conviction for a "felony drug offense" triggered increased penalties under § 841(b)(1)(B). A "felony drug offense" is defined as "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances." 21 U.S.C. § 802(44).

---

[1] R.96 at 2–3.

[2] 21 U.S.C. § 841(b)(1)(B). Mr. Godinez pleaded guilty to a violation of 21 U.S.C. § 846, which directs a sentencing court to penalties outlined elsewhere, in this case, § 841. Section 846 provides, "Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

On October 20, 2017, the Government filed an information under 21 U.S.C. § 851, notifying the district court that Mr. Godinez had a prior conviction for possession of cocaine, imposed by an Ohio court in 2008 (the "Ohio conviction"). In the plea agreement, Mr. Godinez had acknowledged the prior Ohio conviction as well as a prior conviction for possession of a firearm by a fugitive.[3]

On January 16, 2019, the district court imposed a total sentence of 204 months' imprisonment. That sentence included a sentence of 144 months' imprisonment for Count One, conspiracy to distribute cocaine. In crafting this Count One sentence, the district court, believing that the Ohio conviction rendered Mr. Godinez eligible for a ten-year mandatory minimum instead of a five-year minimum sentence, used that higher mandatory minimum as its starting point. The court also determined that an upward variance was appropriate based on Mr. Godinez's carrying extra ammunition, the similarity of his past criminality to the present episode, his recent removal from the United States, and the likelihood of future illegal reentry.[4] Mr. Godinez did not object at sentencing to the presentence report or to the accuracy of the statements made at sentencing.

## II.

### DISCUSSION

Mr. Godinez submits that the district court misapprehended the governing law and, consequently, mischaracter-

---

[3] R.96 at 9–10.

[4] R.167 at 44.

ized the nature of his previous Ohio conviction. In his view, the sentencing court erred when it determined that the Ohio conviction for *possession* of cocaine triggered the increased ten-year mandatory minimum under 21 U.S.C. § 841(b)(1)(B).

Because Mr. Godinez did not object at sentencing, we review for plain error. *United States v. Taylor*, 909 F.3d 889, 893 (7th Cir. 2018). To grant relief under the plain error doctrine, we must determine that there was an error, that it is "clear" or "obvious," and that it affected the defendant's substantial rights. *United States v. Olano*, 507 U.S. 725, 732–34 (1993); *Taylor*, 909 F.3d at 893. If these conditions are met, we can exercise our discretion to remedy the error "if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Olano*, 507 U.S. at 736 (alteration in original) (quoting *United States v. Atkinson*, 297 U.S. 157, 160 (1936)).

**A.**

We begin with an examination of the statutory scheme governing sentencing in this case. The basic statute, 21 U.S.C. § 841, is the starting point of our analysis. It imposes a five-year mandatory minimum for offenses such as Count One, conspiracy to distribute cocaine. Before the passage of the First Step Act, that five-year mandatory minimum became a ten-year minimum when a defendant had a prior conviction for a "felony drug offense."[5] 21 U.S.C. § 841(b)(1)(B) (2010).

---

[5] A "felony drug offense" is defined as "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating

(continued … )

The First Step Act amended this statute. Among other things, the Act effected sentencing reform by modifying the penalties for certain federal offenses, including Mr. Godinez's crime of conviction. More precisely, the Act narrowed the category of offenses that triggered the higher ten-year mandatory minimum.[6] Now, a prior conviction must be a "*serious drug felony*"—not a *felony drug offense*—to increase the mandatory minimum under § 841(b)(1)(B).

The First Step Act does not define the term "serious drug felony." Instead, it points to 18 U.S.C. § 924(e)(2) of the Armed Career Criminal Act ("the ACCA").[7] That section defines a "serious drug offense" as

---

( … continued)

to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances." 21 U.S.C. § 802(44).

[6] Section 401(a)(2)(B) of the First Step Act provides,

> (a) The Controlled Substances Act (21 U.S.C. 801 et seq.) is amended—
>
> …
>
> (B) in subparagraph (B), in the matter following clause (viii), by striking "If any person commits such a violation after a prior conviction for a *felony drug offense* has become final" and inserting the following: "If any person commits such a violation after a prior conviction for a *serious drug felony* or serious violent felony has become final".

First Step Act of 2018, Pub. L. 115-391, § 401(a)(2)(B), 132 Stat. 5194 (emphasis added).

[7] Section 401(a)(1) of the First Step Act reads,

(continued … )

> (i) an offense under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46 for which a maximum term of imprisonment of ten years or more is prescribed by law; or

> (ii) an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law.

18 U.S.C. § 924(e)(2)(A). Because Mr. Godinez's prior conviction for possession was an offense under state law, it is a "serious drug offense" under § 924(e)(2) only if it meets the requirements of subsection (ii) concerning state law offenses. In short, a ten-year mandatory minimum is only permissible *if* the Ohio conviction is an offense "involving manufactur-

---

( … continued)

> The term "serious drug felony" means an offense described in section 924(e)(2) of title 18, United States Code, for which—

> (A) the offender served a term of imprisonment of more than 12 months; and

> (B) the offender's release from any term of imprisonment was within 15 years of the commencement of the instant offense.

§ 401(a)(1), 132 Stat. 5194.

ing, distributing, or possessing with intent to manufacture or distribute, a controlled substance ... ." *Id.* § 924(e)(2)(A)(ii).

Congress enacted the First Step Act *after* Mr. Godinez entered his plea, but it was effective before he was sentenced. By the Act's own terms, the provisions relevant to Mr. Godinez "shall apply to any offense that was committed before the date of enactment of this Act, if a sentence … has not been imposed as of such date of enactment."[8]

**B.**

The parties present different perspectives on how this provision of the First Step Act ought to apply to Mr. Godinez's situation.

The Government agrees that the First Step Act applies to Mr. Godinez. It nevertheless maintains that his offense is a "serious drug offense" within the meaning of § 924(e)(2)(A)(ii). In its view, even though Mr. Godinez's Ohio conviction is for *possession* of cocaine, it is, for purposes of federal sentencing, an offense "involving … possessing with intent to … distribute, a controlled substance" and therefore a "serious drug offense" deserving of the mandatory ten-year minimum. Relying on our cases interpreting the ACCA, it submits that the Ohio conviction need not include the formal element of "intent to … distribute" to be considered an offense "*involving*" "intent to … distribute." Rather, the Government continues, the word "involving" in § 924(e)(2)(A)(ii) extends more broadly and includes the vio-

---

[8] First Step Act § 401(c).

lation of a statute that prohibits the possession of a large quantity of drugs.

There is some force, at least at first glance, to the Government's analysis. We agree that Congress, by employing the term "involving," intended to cover more offenses than those that explicitly have as an element manufacturing, distributing, or possessing with intent to distribute. An offense "involving" specified conduct is an offense that necessarily entails that conduct. *Shular v. United States*, 140 S. Ct. 779, 784–85 (2020) (indicating that § 924(e)(2)(A)(ii) refers to offenses that necessarily require certain conduct); *Kawashima v. Holder*, 565 U.S. 478, 483–84 (2012) (concluding that a statute referencing offenses that "involve" fraud or deceit refers to "offenses with elements that necessarily entail fraudulent or deceitful conduct"). Indeed, we have construed the term "involving" to carry "expansive connotations." *United States v. Williams*, 931 F.3d 570, 575 (7th Cir. 2019) (internal quotation marks omitted).[9] Notably, the language of a parallel provision in the same statute supports this interpretation. Section 924(e)(2) defines the terms "serious drug offense" and "violent felony." While a "serious drug offense" under state law is defined as an offense "*involving* manufacturing, distributing, or possessing with intent to manufacture or dis-

---

[9] In *United States v. Williams*, 931 F.3d 570, 576 (7th Cir. 2019), we concluded that the Indiana offense of financing the manufacture or delivery of cocaine was a "serious drug offense" because Indiana courts had interpreted the language of the statute to exclude individuals purchasing the drugs for personal use. Therefore, the Indiana statute reached only activity that would be a "serious drug offense under the federal ACCA." *Id.*

tribute, a controlled substance," a "violent felony" is defined in relevant part as a crime "involving the use or carrying of a firearm, knife, or destructive device" that "*has as an element* the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(A)–(B) (emphasis added).[10] "[W]here Congress includes particular

---

[10] Section 924(e)(2)(A)–(B) reads in full,

> (2) As used in this subsection—
>
> (A) the term "serious drug offense" means—
>
>> (i) an offense under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46 for which a maximum term of imprisonment of ten years or more is prescribed by law; or
>>
>> (ii) an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law;
>
> (B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that—
>
>> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(continued … )

language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (alteration in original) (internal quotation marks omitted).

The Supreme Court in *Kawashima* concluded, in the context of an immigration statute, that the term "involving" swept more broadly than "has as an element." 565 U.S. at 483–84 (reasoning that although fraud and deceit "are not themselves formal elements of the crime, … [t]he scope of that clause is not limited to offenses that include fraud or deceit as formal elements"). In *Shular*, the Court suggested that Congress might not have used the language "has as an element" in § 924(e)(2)(A)(ii) because Congress "may … have wanted to clarify that the state offense need not include the identified conduct as a formal element." 140 S. Ct. at 786.

Even before the Court's decision in *Shular*, there was widespread agreement among our sister circuits that "involving" reaches more broadly than "has as an element."[11]

---

( … continued)

> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another; … .

[11] *See United States v. Wallace*, 937 F.3d 130, 144 (2d Cir. 2019) (attempted criminal sale of a controlled substance is a "serious drug offense"); *United States v. Myers*, 925 F.3d 881, 886 (6th Cir. 2019) (initiation of methamphetamine manufacture process is a "serious drug offense"); *United States v. Daniels*, 915 F.3d 148, 155 (3d Cir. 2019) (attempt to manufacture,

(continued … )

Nonetheless, not every offense conceivably related to the manufacture or distribution of drugs "involves" the intent to manufacture or distribute. "While the term 'involving' may be expansive, it is not limitless." *United States v. Whindleton*, 797 F.3d 105, 111 (1st Cir. 2015). The offense conduct of the state statute must "necessarily entail" the conduct specified in the ACCA. *Kawashima*, 565 U.S. at 483–84; *see also Shular*, 140 S. Ct. at 784–85. In the context of § 924(e)(2)(A)(ii), therefore, the conduct of manufacturing, distributing, or possessing with intent to manufacture or distribute must be inherent in the state law offense. For example, our sister circuits have determined that offenses such as the attempt to distribute a controlled substance and the initiation of the methamphetamine manufacture process are "serious drug offenses." *United States v. Williams*, 488 F.3d 1004, 1009 (D.C. Cir. 2007); *United States v. Myers*, 925 F.3d 881, 886 (6th Cir. 2019).

We now turn to the case before us. *Shular* makes clear that we must determine whether the Ohio state law offense meets § 924(e)(2)(A)(ii)'s definition of a "serious drug offense" by comparing the elements of the Ohio statute to the *conduct* described in the ACCA. To determine whether the

---

( … continued)

distribute, or possess with intent to manufacture or distribute a controlled substance is a "serious drug offense"); *United States v. White*, 837 F.3d 1225, 1233–34 (11th Cir. 2016) (collecting cases); *United States v. Vickers*, 540 F.3d 356, 366 (5th Cir. 2008) (delivery of a controlled substance is a "serious drug offense"); *United States v. McKenney*, 450 F.3d 39, 42 (1st Cir. 2006) (conspiracy to possess with intent to distribute is a "serious drug offense"); *United States v. Brandon*, 247 F.3d 186, 190 (4th Cir. 2001) (interpreting "involving" broadly).

offense of conviction is one "involving" the intent to manu-facture or distribute, we therefore must begin by examining carefully the Ohio statute.

There are—and at the time of Mr. Godinez's 2008 convic-tion were—separate statutes in Ohio prohibiting the posses-sion of a controlled substance and the trafficking of con-trolled substances. Mr. Godinez was convicted of possession of cocaine. At the time of his conviction, Ohio Revised Code Section 2925.11 (2008), the statute of conviction, provided in relevant part,

> (A) No person shall knowingly obtain, possess, or use a controlled substance.
>
> …
>
> (C) Whoever violates division (A) of this sec-tion is guilty of one of the following:
>
> …
>
>> (4) If the drug involved in the violation is cocaine or a compound, mixture, prepara-tion, or substance containing cocaine, who-ever violates division (A) of this section is guilty of possession of cocaine. The penalty for the offense shall be determined as fol-lows: …

Ohio Rev. Code § 2925.11(A), (C)(4) (2008). What followed was a graduated set of penalties based on the quantity pos-sessed. On one end of the spectrum, possession of five to less than twenty-five grams of powder cocaine or one to less than five grams of crack cocaine was a fourth-degree felony that carried a presumption of a prison term. *Id.*

§ 2925.11(C)(4)(b). At the other end, possession of one thousand or more grams of powder cocaine or one hundred or more grams of crack cocaine was a first-degree felony that carried a mandatory prison term of the maximum prison term prescribed for a first-degree felony.

Mr. Godinez maintains that "no matter the quantity of cocaine at issue in [his] Ohio case, his conduct—established by and limited to the elements of his state conviction—does not satisfy § 924(e)(2)(A)(ii)."[12] We are unwilling to state the inquiry so narrowly; it risks conflating the term "involving" in the ACCA with "has as an element." Rather, we must focus on whether the Ohio offense of conviction necessarily entails an intent to distribute.

Mr. Godinez was convicted of possession of cocaine under Ohio Revised Code Section 2925.11(C)(4)(f). At the time of his conviction, to violate this subsection, he would have had to possess at least one hundred grams of crack cocaine or at least one thousand grams of powder cocaine. We therefore must ask whether a violation of a state statute prohibiting the possession of one hundred grams of crack cocaine or one thousand grams of powder cocaine is an offense that *necessarily entails* the intent to manufacture or distribute cocaine.

To answer this question, we must, in the Government's view, widen the lens of our inquiry and examine the structure of the Ohio statutory scheme. Such an examination, continues the Government, reveals that the state legislature in-

---

[12] App. R.50 at 1.

tended to "make the possessor's intent to distribute inherent in the proscribed conduct."[13] The statutory scheme contains, albeit in separate sections, parallel sets of graduated—and identical—penalties for possession and for trafficking of controlled substances. This structure, suggests the Government, demonstrates that Ohio takes possession just as seriously as it takes trafficking.

So far so good. But we do not see how this parallelism for possession and trafficking offenses supports the argument that the Ohio legislature incorporated intent to distribute in its proscription of the possession of large quantities of drugs. Indeed, the penalties are also identical for possession and trafficking of small quantities.

The Government sees more in the Ohio statute to support its position. It notes that, at the time of Mr. Godinez's conviction, the Ohio statute provided (and still provides) an affirmative defense of "personal use" to charges of fourth-degree felony violations under Section 2925.11.[14] Therefore, at the time of Mr. Godinez's offense, an individual charged with possession of five to less than twenty-five grams of powder cocaine, or one to less than five grams of crack cocaine, who successfully established that the controlled substance was possessed solely for personal use could be instead eligible for prosecution of a misdemeanor or fifth-degree felony. This defense is not available, however,

---

[13] Government's Supp. Br. 7.

[14] Ohio Rev. Code § 2925.11(F). With respect to this portion of the statute, the 2008 and 2019 versions are identical.

for third-, second-, and first-degree felonies. Thus, the Government submits, the Ohio statutory scheme recognizes that possession of a larger quantity of drugs gives rise to the inference of an intent to manufacture or distribute.

This argument has an initial appeal and deserves our close attention. In the end, however, we do not find it persuasive. A legislative grant of an affirmative defense of personal use for the possession of small amounts of controlled substances does not *compel* the inference that a defendant who possesses a quantity in excess of that small amount necessarily has the intent to manufacture or distribute that larger amount. The Ohio legislature does not require its prosecutors to prove beyond a reasonable doubt that a defendant in Mr. Godinez's shoes had the intent to manufacture or to distribute the contraband. To use the conviction for possession to support a ten-year minimum federal sentence under the ACCA, we would have to permit the Government to employ an irrebuttable presumption of intent to manufacture or distribute, a fact that the Ohio legislature did not include as one of the elements of the crime of conviction and that the State therefore was not required to prove beyond a reasonable doubt. Although a prosecutor may ask a trier of fact to consider possession of a large amount of contraband as evidence of intent to distribute, such a permissible evidentiary inference is a far cry from saying that a state criminal statute necessarily entails such an intent.

Moreover, the structure of Ohio's drug enforcement scheme is stark evidence that it is not Section 2925.11 that necessarily entails possession with intent to distribute. While Section 2925.11 addresses possession of controlled substanc-

es, a separate section, Ohio Revised Code Section 2925.03 (2008),[15] addresses trafficking. That section provides,

> No person shall knowingly do any of the following:
>
> (1) Sell or offer to sell a controlled substance;
> (2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person.

Ohio Rev. Code § 2925.03(A) (2008). While the conduct of "[p]repar[ing] for shipment," read in isolation, might possibly mean mere possession, when read in the context of the requirement that an offender must "know[] or ha[ve] reasonable cause to believe that the controlled substance is intended for sale or resale," it is clear that the provision prohibits possession with intent to distribute. *See United States v. Walker*, 858 F.3d 196, 200 (4th Cir. 2017) (concluding that each act specified under Section 2925.03(A)(2) is an act of distribution); *United States v. Fuentes-Oyervides*, 541 F.3d 286, 289 (5th Cir. 2008) (rejecting the argument that Section 2925.03 encompasses mere possession and holding that it covers "act[s] of distribution"); *United States v. Karam*, 496 F.3d 1157, 1167–68 (10th Cir. 2007) (concluding that Section 2925.03(A)(2) describes "acts of distribution" and "prohibits each of the various phases of the distribution process"). That

---

[15] For all purposes relevant to our analysis here, the 2008 and 2019 versions of Ohio Revised Code Section 2925.03 are substantively identical.

possession with intent to manufacture or distribute is an offense under Section 2925.03 certainly lends support to the contention that the more serious offenses of possession under Section 2925.11 do not necessarily entail the intent to manufacture or distribute. Mr. Godinez could have been charged with Section 2925.03(A)(2), but he was convicted of the categorically different offense of possession under Section 2925.11.

Two of our sister circuits have concluded that a court of appeals may infer intent to manufacture or to distribute from a prior conviction for possession. We conclude that neither of these cases, which involve statutory structures different from the one here, provides a sound rule of decision for the case before us. In *United States v. Brandon*, 247 F.3d 186 (4th Cir. 2001), the Fourth Circuit considered whether a prior conviction for possession under a North Carolina statute was a "serious drug offense." North Carolina General Statute Section 90-95(h)(3) provided that "[a]ny person who sells, manufactures, delivers, transports, or possesses 28 grams or more of cocaine … shall be guilty of a felony … known as 'trafficking in cocaine.'" Three levels of penalties existed under the statute, corresponding to the quantity of the substance involved. Brandon was convicted of possession of twenty-eight to two hundred grams of cocaine. The Fourth Circuit considered "whether intent to manufacture or distribute is inherent in the generic conduct proscribed by the statute and alleged in the indictment underlying Brandon's 1994 conviction—possession of more than twenty-eight grams but less than two hundred grams of cocaine." 247 F.3d at 191–92. It observed that although intent to distribute might be inherent in the possession of very large amounts of cocaine, such as two hundred grams, Brandon's

offense could have involved a quantity at the lower end of the range proscribed by the statute. "Given the range of drug quantities covered by the North Carolina statute, … we simply cannot say that the typical conduct reached by that statute inherently involves an intent to manufacture or distribute that cocaine." *Id.* at 193.

It may be reasonable to infer intent to distribute from possession of a large quantity of drugs, but as the Fourth Circuit noted, it is not a necessary inference. The North Carolina statute at issue in *Brandon* was labeled a "trafficking" offense, but the court concluded,

> [i]t is an oversimplification to say that all trafficking offenses in North Carolina involve an intent to distribute. While the North Carolina legislature may well have concluded that one who possesses more than twenty-eight grams of cocaine likely intends to distribute it, the statute by its terms applies to those who do not intend to distribute as long as they possess the requisite quantity.

*Id.* at 195. The North Carolina legislature could have made intent to distribute inherent in the offense, but it did not. The statute was broad enough to cover possession without intent to distribute, and thus "it cannot fairly be said that an intent to distribute is inherent in *all* violations of N.C. Gen. Stat. § 90-95(h)." *Id.* (emphasis added).

By contrast, the Eleventh Circuit concluded that intent to distribute was inherent in all violations of an Alabama statute prohibiting trafficking in drugs. *United States v. White*,

837 F.3d 1225 (11th Cir. 2016). White was convicted of violating an Alabama statute pursuant to which

> [a]ny person who knowingly sells, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, 28 grams or more of cocaine or of any mixture containing cocaine, described in Section 20-2-25(1), is guilty of a felony, which felony shall be known as "trafficking in cocaine."

Ala. Code § 13A-12-231(2). Levels of punishment for violations of the statute increased according to the quantity of cocaine involved. The statute was part of Alabama's three-tiered system for drug offenses; the offense for which White was convicted was part of the most serious tier. The other two tiers prohibited (1) possession of any amount of a controlled substance other than marijuana, and (2) the unlawful distribution of or possession with intent to distribute a controlled substance other than marijuana. Reasoning that "a statute classifying possession of a certain quantity of drugs was sufficient to indicate an intent to distribute those drugs," the Eleventh Circuit came to the opposite conclusion as the Fourth Circuit and determined that twenty-eight grams was sufficient to give rise to an inference of intent to distribute. *Id.* at 1234.

The statutory schemes in *Brandon* and *White* are markedly different than the Ohio statute here. The statutes in those cases outlined separate offenses for the possession of small amounts of controlled substances and the sale, manufacture, delivery, transport, or possession of larger amounts. The Ohio statute is structured differently in that possession and trafficking are distinct offenses. The statute here does not in-

dicate that the conduct proscribed necessarily entails the intent to manufacture or distribute.

## C.

It is not enough to conclude that an error occurred; to satisfy plain error review, the error must have been plain and must have affected Mr. Godinez's substantial rights. *Olano*, 507 U.S. at 732–34; *see United States v. Jaimes-Jaimes*, 406 F.3d 845, 850–51 (7th Cir. 2005) (concluding that the court plainly erred in imposing an unwarranted 16-level increase). A "plain" error is one that is "clear" or "obvious." *Olano*, 507 U.S. at 734. Here, the sentencing court failed to consider the changes made by the First Step Act, namely, the heightened thresholds that must be met for a court to impose increased mandatory minimums for certain drug offenses. Such a misapprehension of law is "plain." The error affected Mr. Godinez's substantial rights because it doubled the mandatory minimum to which he was subject, increasing the Guidelines range. "We have repeatedly held that a sentencing based on an incorrect Guidelines range constitutes plain error and warrants a remand for resentencing, unless we have reason to believe that the error in no way affected the district court's selection of a particular sentence." *United States v. Martin*, 692 F.3d 760, 766 (7th Cir. 2012) (internal quotation marks omitted).

If these requirements are met, we may exercise our discretion to remedy plain error "if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Olano*, 507 U.S. at 736 (alteration in original) (quoting *Atkinson*, 297 U.S. at 160). Here, the error affected the fairness of Mr. Godinez's sentencing proceedings by sub-

jecting him to an increased mandatory minimum. At sentencing, Mr. Godinez

> may have failed to notice the sentencing error, but so did defense counsel, the Assistant United States Attorney, … and the district court judge, and we conclude that it would be unjust to place the entire burden for these oversights on [Mr. Godinez] by permitting him to serve an excessive prison sentence.

*Jaimes-Jaimes*, 406 F.3d at 851.

## Conclusion

Mr. Godinez's prior conviction for possession of cocaine was not a "serious drug offense" within the meaning of § 924(e)(2)(A) and therefore was not a "serious drug felony" under § 841(b)(1)(B). Thus, it should not have triggered heightened penalties. The district court plainly erred when it began its sentencing calculations with a mandatory minimum of ten years instead of five years. Accordingly, we vacate Mr. Godinez's sentence and remand for resentencing.

VACATED and REMANDED