In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-3283

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MARCUS C. DURHAM,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 4:96-cr-40051 — **Staci M. Yandle**, *Judge.*

SUBMITTED APRIL 28, 2020[*] — DECIDED JULY 17, 2020

Before EASTERBROOK, RIPPLE, and SCUDDER, *Circuit Judges.*

SCUDDER, *Circuit Judge.* Marcus Durham received a 35-year
sentence for a federal drug offense that was later reduced to
20 years due to subsequent amendments to the Sentencing
Guidelines. Upon regaining his liberty, however, Durham

---

[*] We granted the appellant's motion to waive oral argument, and the
appeal is therefore submitted on the briefs and the record. FED. R. APP. P.
34(a)(2)(C).

violated the terms of his supervised release, including by committing a domestic battery. The district court sentenced him to 30 months' imprisonment for these violations—about twice the high end of the guidelines advisory range. In imposing this sentence, the district court emphasized the gravity of Durham's abuse of his ex-girlfriend. Durham contends that the 30-month sentence is too long and the product of the district court effectively penalizing him for benefiting from the amendments to the guidelines that reduced his original sentence. Having taken our own fresh look at the sentencing transcript, we see no errors and therefore affirm.

**I**

In 1997 Marcus Durham was convicted of conspiring to distribute substantial quantities of crack cocaine and sentenced to 35 years' imprisonment to be followed by a ten-year term of supervised release. Years later he caught a break when the U.S. Sentencing Commission made two amendments to the Sentencing Guidelines that applied to him—Amendments 750 (2011) and 782 (2014)—both of which adjusted the offense levels for certain drug crimes, including those involving crack cocaine. The amendments applied retroactively to offenders like Durham and had the combined effect of reducing his term of imprisonment to 20 years. He completed serving that portion of his sentence in 2015 and was released from custody, though he remained bound to abide by the conditions of his supervised release for the next decade.

Durham's freedom was short-lived. In July 2018 the Probation Office asked the district court to revoke his supervised release on the basis of multiple violations, including a domestic battery, theft of over $500 (of clothing from a Dillard's department store), unauthorized travel outside the judicial

district, and making false statements in a report to his probation officer. The court held a hearing on the alleged violations, and the government presented testimony from several witnesses.

One of those witnesses was Durham's former girlfriend. She testified that Durham showed up at her home at 2:30 a.m. to rehash a fight. She explained that "he was upset, saying he was going to treat me like he treat[s] the bitches on the streets." She walked him out of her house, away from her daughter who was upstairs, as he continued his rant. The two made their way to the porch, where the altercation turned physical and Durham pushed her into a bush. She then ran down the street and managed to call 911.

A neighbor who witnessed the incident largely corroborated the victim's account, testifying that he saw her arguing with a man on the porch at that same time. But he described the physical contact as being more violent, stating that he saw the man "grab[] her by the throat and [throw] her down onto the concrete." He too called 911, and the district court admitted the recordings of both his call and the ex-girlfriend's at the hearing.

At the close of the witness testimony, the district court found that the government had proved multiple supervised release violations, including the domestic battery, by a preponderance of the evidence. Turning to sentencing, the court observed that the statutory maximum was 60 months' imprisonment and, in agreement with the parties, determined that the advisory range under the Sentencing Guidelines was 8 to 14 months.

The government recommended 30 months in light of Durham's violations, which evidenced a lack of respect for the law. The government also observed that amendments to the guidelines had afforded Durham an opportunity in the form of a reduced sentence, which he then failed to take advantage of by returning to crime. The government argued that the sentencing factors in 18 U.S.C. § 3553(a), including the need to deter Durham from further criminal conduct, warranted a 30-month sentence.

Defense counsel urged a sentence of time-served, emphasizing Durham's good behavior during his first three years of supervised release. In the course of his argument, defense counsel also observed that Durham had successfully "served all 20 years of [his prior reduced] sentence"—"every day of that 240 months." The district court rejoined by asking how that observation had anything to do with the appropriate sentence for Durham's supervised release violations. The district court then offered this remark: "The guideline allows for an upward variance, if he received a reduction. He has received two reductions. He started off with a sentence of 420 months. It was reduced once on the drug amendments, and then a second time. That is what the sentencing guideline speaks to."

The district court's reference was almost certainly to Application Note 4 to U.S.S.G. § 7B1.4, which provides that "[w]here the original sentence was the result of a downward departure (e.g., as a reward for substantial assistance), or a charge reduction that resulted in a sentence below the guideline range applicable to the defendant's underlying conduct, an upward departure may be warranted." We say almost certainly because, though neither party mentioned the application note at the hearing, the Probation Office expressly

referenced that note in its presentencing submission outlining the sentencing options available to the district court. The district court's reference to Application Note 4 makes sense in context given that the government's argument included both mention of the reductions to Durham's original sentence and a request for an upward variance.

Durham's attorney reacted to the district court's reference by saying, "That's a point well-taken, Judge." Sentencing continued without any additional reference to the guidelines. For his part, Durham accepted the district court's invitation to make a statement on his behalf. He denied having assaulted his ex-girlfriend, going so far as to say that "[e]verything she said was not true." Durham also suggested that he had done everything possible to abide by the terms of his supervised release. These statements did not sit well with the district court, who promptly reacted by saying, "Sir, you violated your supervised release with domestic violence. This is not an administrative violation [and indeed] I heard [the victim's] description. I listened to the 911 tape. I heard the 911 call from her neighbor. It was a violent act."

In the end, the district court sentenced Durham to 30 months for the supervised release violations. Just before announcing the sentence, the court expressed to Durham its "concern[] with the need to protect the public from you because of your conduct, because of your violation conduct," telling him that what he did was "serious" and warranted a meaningful punishment that would deter future criminal conduct. Along similar lines, the court pointed to Durham's belligerent conduct with the police upon being arrested for possessing the stolen clothing from the Dillard's, stating that "[t]here is a need to promote a respect for the law." In

summarizing its reasoning, the district court acknowledged Durham's compliance with the terms of his supervised release for three years but then underscored that he "fell back off into criminality" and "did so in such a way that the circumstances of your violations tell this Court that there is a need for [a] serious disposition and sentence."

Durham now appeals.

## II

We start with Durham's challenge to the procedural reasonableness of his revocation sentence. His primary contention is that the district court arrived at the 30-month revocation sentence—thus imposing a variance above the advisory range of 8 to 14 months—by impermissibly considering that Durham had succeeded in invoking Amendments 750 and 782 to the Sentencing Guidelines and realizing two reductions to his original sentence (from 35 to 20 years). Durham grounds his position in the district court's remark during the revocation proceeding that "[t]he guideline"—a likely reference to Application Note 4 to U.S.S.G. § 7B1.4—"allows for an upward variance, if he received a [prior sentencing] reduction." The court's reliance on Application Note 4, Durham contends, reflected legal error because the sentencing reductions he received had nothing to do with any departure afforded at his original sentencing, but instead followed entirely from subsequent retroactive amendments to the guidelines.

At one level, Durham is correct. He is right that Application Note 4 to § 7B1.4 permits "an upward departure" for a revocation sentence "[w]here the original sentence was the result of a downward departure" or "a charge reduction that

resulted in a sentence below the guideline range applicable to the defendant's underlying conduct." That policy statement does not apply to Durham's case because his original sentence involved no such downward departure or charge reduction. Nor were the later modifications to his sentence the fruit of any departure or charge reduction—they came pursuant to Amendments 750 and 782, and in no way can an amendment to the guidelines be said to be a departure. See *United States v. Wade*, 890 F.3d 629, 633 (7th Cir. 2018).

To the extent the district court held a different understanding, Durham is on sound ground calling that view a legal error. But it is equally plain that not all procedural errors require resentencing. See *United States v. Salgado*, 917 F.3d 966, 969–70 (7th Cir. 2019). And that is especially so where, as here, the district court not only properly computed the advisory sentencing range but also heard no objection from Durham to the reference about Application Note 4 to § 7B1.4. To the contrary, defense counsel affirmatively agreed with the district court's statement, saying, "[t]hat's a point well taken, Judge." In these circumstances, our review of the district court's erroneous comment about Application Note 4 is only for plain error. See *United States v. Godinez*, 955 F.3d 651, 654 (7th Cir. 2020).

To grant relief under this standard of review, we must find that "there was an error, that it is 'clear' or 'obvious,' and that it affected [his] substantial rights." *Id*. (citing *United States v. Olano*, 507 U.S. 725, 732–34 (1993)). The last condition requires Durham to "show a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904–05 (2018) (quoting *Molina-Martinez v. United States*, 136 S. Ct.

1338, 1343 (2016)). Even then, we will correct the forfeited error only if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id*. at 1905 (quoting *Molina-Martinez*, 136 S. Ct. at 1343).

Having reviewed the entirety of the sentencing transcript, see *United States v. Colon*, 919 F.3d 510, 519–20 (7th Cir. 2019), we are convinced that the district court's erroneous statements was harmless. See *United States v. Prado*, 743 F.3d 248, 253 (7th Cir. 2014) (citing *United States v. Abbas*, 560 F.3d 660, 667 (7th Cir. 2009)). After its brief and limited reference to Application Note 4 to U.S.S.G. § 7B1.4, the district court never returned to the Sentencing Guidelines in any way, much less to any discussion (direct or otherwise) of the application note. Read as a whole, the sentencing transcript leaves us of the firm conviction that the district court selected the 30-month revocation sentence by applying the § 3553(a) factors and, most especially, considering the "nature and circumstances" of Durham's supervised release violations, foremost the violent assault of his former girlfriend.

To be sure, it is fair to read the transcript to include the district court evincing concern that, upon his release from imprisonment for his underlying drug offense, Durham failed to take full advantage of his newfound liberty and instead "fell back off into criminality." But no aspect of this reasoning suggests the district court had selected the 30-month revocation sentence because of Durham's receipt of two reductions in his original 35-year sentence. All the district court seemed to be saying, and even then not all that directly, was that Durham had the good fortune of seeing his original sentence reduced to 20 years but then failed to take advantage of that benefit and instead returned to committing crimes, including a

violent domestic battery. Put differently, the district court could reasonably conclude that Durham "squandered" his early release, *Wade*, 890 F.3d at 633, through his "disregard" and "lack of respect" for the law, *United States v. Allgire*, 946 F.3d 365, 367 (7th Cir. 2019). See also *United States v. Padilla*, 618 F.3d 643, 646 (7th Cir. 2010) (allowing for an upward variance where the defendant "had the opportunity to turn his life around and to show his respect for the law and in every case he failed to do so"). Such reasoning was consistent with an analysis of Durham's history and characteristics under § 3553(a).

### III

Nor do we see any substantive error in Durham's sentence. District courts have "more than the usual flexibility in this context." *United States v. Berry*, 583 F.3d 1032, 1034 (7th Cir. 2009) (internal quotation marks omitted). Thus, our review for substantive reasonableness is "highly deferential" and we will reverse only if the sentence is "plainly unreasonable." *United States v. Boultinghouse*, 784 F.3d 1163, 1177 (7th Cir. 2015). The sentence here was not plainly unreasonable. The 30-month sentence, although more than double the high-end of the advisory range, was well within the statutory maximum of 60 months. Moreover, the district court's selection was entirely consistent with its assessment of the gravity of Durham's conduct, the need to protect the public, and the judge's determination that a serious sentence was necessary to deter Durham from future violations.

For these reasons, we AFFIRM.

RIPPLE, *Circuit Judge*, concurring. I concur in the judgment, but reach the same result by way of a somewhat different path.

**A.**

Mr. Durham was sentenced in 1997 to 420 months' imprisonment for crack-cocaine offenses. His sentence was twice reduced after the Guidelines for crack cocaine were amended. Mr. Durham was released from prison in 2015, but in 2018 violated the terms of his supervised release in several serious ways. Based on the nature of his violations, the sentencing guidelines range was eight to fourteen months, and his statutory maximum penalty was sixty months.

At the outset of Mr. Durham's revocation hearing, the district court reviewed the charged violations of supervised release and then reviewed the sentence that Mr. Durham was facing. The court stated:

> Q: All right. Sir, if I find by a preponderance of the evidence that you committed these violations, the most serious of the violations is a Grade B violation.
>
> With a criminal history category of three, the guideline range for possible incarceration and imprisonment is eight to 14 months.
>
> Do you understand that?
>
> A: Yes.
>
> Q: Do you also understand that under the guidelines, sir, because your original sentence was reduced, that the guidelines allow for an

upward variance on that guideline range up to the statutory maximum. In other words, if I find by a preponderance of the evidence that you committed any of these violations, I can sentence you anywhere from eight to 60 months. Do you understand that?

A: Yes.[1]

After this, the court heard approximately eighty pages of testimony concerning Mr. Durham's violations while on supervisory release.

The court made explicit findings of fact concerning the violations and then turned to the imposition of sentence. Mr. Durham's counsel began his argument by noting that Mr. Durham had served "every day of [a] 240 month[]" sentence.[2] At this point, the court asked: "What does that have to do … with what I'm talking about here? The guideline allows for an upward variance, if he received a reduction. He has received two reductions. He started off with a sentence of 420 months. It was reduced once on the drug amendments, and then a second time. That is what the sentencing guideline speaks to."[3] To this, Mr. Durham's counsel responded: "That's a point well-taken, Judge," and went on to his other arguments.[4]

---

[1] R.266 at 8–9.

[2] *Id.* at 106.

[3] *Id.*

[4] *Id.*

After hearing arguments, the court then imposed a sentence of thirty months. It explained the basis for its decision accordingly:

> You are here because of what happened in April of 2018, basically, and June and July of 2018. That, in and of itself, is enough.
>
> Because one of the factors that I have to take into consideration is the nature and the circumstances of the offenses or the violations. Sir, you violated your supervised release with domestic violence. This is not an Administrative violation.
>
> I have found by a preponderance of the evidence that you did in fact subject Miss Gaddie to domestic violence on April 15th, 2018. I heard her description. I listened to the 9-1-1 tape. I heard the 9-1-1 call from her neighbor. It was a violent act.
>
> You could have kept your nose clean and you could have been compliant for nine years and 364 days of your 10-year supervised release and committed this act and you would be violating, and rightfully so, because of the nature and circumstances of the offense.
>
> The other thing I find significant in the circumstances of the offense, sir, is even in your interaction with the Mount Vernon police officers during the time of your arrest in July 2018, you were belligerent. And those interactions—and what that all goes to is, it shows

that there is lacking in you a respect for the law. There is a need to promote a respect for the law. There is a need to impose a sentence that would deter you from future crimes, because obviously you committed crimes. The Court is concerned with the need to protect the public from you because of your conduct—because of your violation conduct.

You—the Court found by a preponderance of the evidence that you were involved in criminality and involved in either the theft of—certainly the theft of all this expensive clothing.

So the bottom line is, I acknowledge what you did for the first three years, but you fell back off into criminality. And you did so in such a way that the circumstances of your violations tell this Court that there is a need for a, a serious disposition and sentence; one that will have the effect of deterring you from future conduct. What you did—I can't give a slap on the wrist for what you did, sir. It's serious.

And so it is the judgment of this Court that the defendant's supervised release shall be revoked and sentence shall be imposed as follows:

Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that the defendant Marcus Costello Durham is hereby committed to the custody of the Bureau of

Prisons to be imprisoned for a term of 30 months.[5]

**B.**

Mr. Durham maintains that the district court erred when it based its decision to impose a sentence in excess of the guideline range on the fact that he received two prior reductions in his sentence. He interprets the district court's comments concerning its ability to impose an upward variance as invoking U.S.S.G. § 7B1.4 application note 4, which provides: "Where the original sentence was the result of a downward departure (e.g., as a reward for substantial assistance), or a charge reduction that resulted in a sentence below the guideline range applicable to the defendant's underlying conduct, an upward departure may be warranted." Mr. Durham submits that this policy statement has no bearing on his situation: the reductions in his sentence were not the result of downward departures based on substantial assistance nor were they the result of charge reductions. According to Mr. Durham, the district court incorrectly relied on this application note as a basis for giving him an above-guidelines sentence, and, therefore, we should remand for resentencing.

**1.**

It is very difficult to conclude, given this record, that the application note played no role in the district court's selection of a sentence. Only moments before sentencing Mr. Durham, the court noted that his prior reductions al-

---

5 *Id.* at 110–11.

lowed for an upward variance. Indeed, when read as a whole, the record supports the view that the district court believed that the application note provided explicit authority to go above the guidelines range. Where, as here, the objective evidence of record reveals the basis upon which the district court acted, we need to be very circumspect in suggesting that, despite what the district court said, the articulated consideration did not play a part in its decision. At some point, such an exercise in attributing a different, subjective meaning to the district court's objective statement becomes nothing more than appellate fact-finding.

**2.**

The district court said what it said. Whether the district court was wrong in its reading of note 4 is a matter open to reasonable debate. Certainly, a strict "plain wording" reading of the text limits its application to defendants who have received a previous "downward departure" or a "charge reduction." However, it also may be read as a general admonition that the sentencing court may consider a defendant's lack of appreciation for earlier reductions in the length of his incarceration that allowed him to move on with his life. If read more broadly, then a defendant who squandered an early release under 18 U.S.C. § 3582(c)(2) by violating his release conditions surely falls within the ambit of the note's purpose and intent. Notably, § 3582(c)(2) is not entirely dissimilar to the sentencing reductions mentioned in note 4. A § 3582(c)(2) reduction is not a reduction granted automatically, but one subject to the discretion of the district judge. *See* 18 U.S.C. § 3582(c)(2) ("[I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the

Sentencing Commission pursuant to 28 U.S.C. 994(o) … the court *may* reduce the term of imprisonment … ." (emphasis added)); *United States v. Purnell*, 701 F. 3d 1186, 1189–90 (7th Cir. 2012); *United States v. Neal*, 611 F.3d 399, 401 (7th Cir. 2010). It is "completely acceptable" for a district court to sentence a defendant above the guidelines range when "previous leniency ha[s] not worked for the defendant." *United States v. Wade*, 890 F.3d 629, 633 (7th Cir. 2018). Indeed, our colleagues in the Sixth Circuit have held explicitly that an upward variance can be premised, at least in part, on a failure to take advantage of a reduction of sentence under § 3582. *See United States v. Wilson*, 630 F. App'x 575, 579–80 (6th Cir. 2015).

**3.**

Even if we accept Mr. Durham's argument that application note 4 cannot be read as encompassing sentence reductions under § 3582, the district court nevertheless has the authority to impose an above-guidelines sentence when it believes that a defendant has squandered an earlier opportunity to make progress in rejoining society. The guideline for revocation of supervised release, like every other guideline, is advisory. Although the district court must start from the correct guideline range (which the court did here), it can impose a sentence above or below that guideline based on the factors set forth in § 3553(a)[6] so long as it stays within the

---

[6] *See, e.g.*, *United States v. Warner*, 792 F.3d 847, 855 (7th Cir. 2015) ("[T]he guidelines are merely advisory. While the § 3553(a) analysis still begins with a consideration of the guidelines, it does not end there. … The guidelines range is only 'a rough approximation of sentences that might achieve § 3553(a)'s objectives' in the 'mine run of cases.' It supplies 'the

(continued … )

statutory range (here sixty months).[7] In short, the general authority of the district court to take into account a defendant's lack of cooperation with past opportunities parallels the more particular authority articulated in application note 4.

Here, the district court clearly had the authority to consider the defendant's lack of cooperation and to impose a sentence higher than a guideline sentence. An above guidelines sentence for failure to take advantage of prior favorable sentencing decisions serves the purposes of 18 U.S.C. § 3553(a). *See Wilson*, 630 F. App'x at 580. ("[T]he district court was permitted to consider Wilson's repeated failure to take advantage of prior favorable decisions in considering whether a within-guidelines sentence would serve the purposes of section 3553(a)."). In short, even if the district court misapprehended the source of its authority, it nevertheless acted within its authority and for a reason compatible with § 3553(a), the governing statute. For this reason, I join the judgment of the court.

---

( … continued)

starting point and the initial benchmark,' but nothing more." (quoting *Rita v. United States*, 551 U.S. 338, 350–51 (2007), and *Gall v. United States*, 552 U.S. 38, 49 (2007), respectively)).

[7] I do not see any indication in the record that the district court was ever under the misapprehension that note 4 compelled it to impose an upward variance or that the note even suggested one. Indeed, the language of the note seems to make clear that the district court has complete discretion.